MONTGOMERY WARD & CO., INCORPORATED, Plaintiff-Appellee, *v.*
JAMES D. WETZEL *et al.*, Defendants-Appellants.—(JAMES D. WETZEL
*et al.*, Counterplaintiffs-Appellees, *v.* BENSENVILLE ASSOCIATES, a/k/a
Bensenville Investments, *et al.*, Counterdefendants-Appellants.)

First District (3rd Division)    Nos. 80-1345, 80-1828 cons.

Opinion filed June 24, 1981.

Peter J. Kilchenmann, of Aaron, Schimberg, Hess, Rusnak, Deutsch & Gilbert, of Chicago, for appellants James D. Wetzel and Pain & Sutherlin, Inc.

Rudnick & Wolfe, of Chicago (Jay A. Canel and Don E. Glickman, of counsel), for appellants P.E.F., Inc., George Cibula, Bensenville Associates, Michael Birnkrant, James Loewenberg, and Scott Hodes.

James W. Kissel, Mark C. Curran, and Gerald L. Angst, all of Sidley & Austin, and Christopher J. Michas, of Montgomery Ward & Co., all of Chicago, for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

This consolidated appeal arises out of an action by plaintiff, Montgomery Ward & Co., Incorporated, a lessee, against James D. Wetzel, George Cibula, Pain & Sutherlin, Inc., P.E.F., Inc., and Bensenville Associates, a/k/a Bensenville Investments, a partnership, and Michael Birnkrant, James Loewenberg and Scott Hodes, d/b/a Bensenville Associates and Bensenville Investments (hereinafter Bensenville), to recover real estate tax overpayments and other sums allegedly due under the terms of a lease. The trial court granted Montgomery Ward's motion for summary judgment on count I of the complaint against Wetzel, Cibula, Pain & Sutherlin, and P.E.F., jointly and severally, for the principal amount and prejudgment interest. (The remaining counts seeking recovery from Bensenville are still pending and are not involved in this appeal.) These defendants appeal from the entry of summary judgment; additionally P.E.F. and Cibula appeal from the award of prejudgment interest. Simultaneously, Wetzel and Pain & Sutherlin had filed a counterclaim against Bensenville seeking indemnification and attorneys' fees pursuant to an indemnity provision in the parties' real estate contract. The trial court granted summary judgment in favor of Wetzel and Pain & Sutherlin, and Bensenville appeals from that order.

On November 21, 1973, Montgomery Ward, as lessee, and Pain & Sutherlin, agent for the beneficiaries of a certain land trust, as lessor, executed a five-year lease of a warehouse located in Bensenville, Illinois. The beneficiaries were not named or otherwise disclosed in the lease. Montgomery Ward was required to remit to the lessor, as additional rent, certain monthly payments which constituted an estimated prepayment of its proportionate share of the general real estate taxes. The lessor agreed to furnish Montgomery Ward with a written statement of its actual tax obligation each year. If Montgomery Ward's prepayments exceeded its actual tax obligation, the lessor was to refund the excess sums. At the time the lease was executed, Wetzel and Pain & Sutherlin were the beneficiaries of the subject land trust. P.E.F. and Cibula acquired their beneficial interests in the land trust in December 1976, and August 1977, respectively.

On June 30, 1978, Pain & Sutherlin, P.E.F. and Cibula assigned their beneficial interests to Bensenville pursuant to a real estate sales contract, which provided, in relevant part, as follows:

> "Purchaser [Bensenville] acknowledges that [Montgomery Ward] as Sub-Lessee, has paid real estate taxes in excess of the amount owed by Wards under its Sub-lease. Purchaser hereby assumes all obligations of Seller to Wards as a result of such overpayment of taxes as aforesaid and indemnifies Seller from and against all costs and expenses Seller may incur, including reasonable attorneys fees, arising out of such overpayment."

Following this transaction, Bensenville contacted Montgomery Ward and offered to reimburse it for the overpayment of real estate taxes for the period May 6, 1974, through December 31, 1977, in several installments, to commence in October 1978. Bensenville suggested that Montgomery Ward should continue to pay the monthly rent and Bensenville would issue the refunds by separate checks. In a letter dated October 10, 1978, Montgomery Ward agreed to accept payment on the terms proposed by Bensenville. Meanwhile, on September 21, 1978, the warehouse was destroyed by fire. Montgomery Ward never received payment from Bensenville.

On June 8, 1979, Montgomery Ward brought the present action. Count I was directed against Wetzel, Pain & Sutherlin, Cibula and P.E.F. Defendants filed an answer denying that they owed any sums to Montgomery Ward. Cibula and P.E.F. also denied that they were beneficiaries and that Pain & Sutherlin acted on their behalf in executing the lease.

On November 28, 1979, Montgomery Ward filed its motion for summary judgment on count I. An affidavit revealed that Montgomery Ward's overpayments totalled $117,360. Wetzel's attached deposition disclosed that he was aware prior to the sale to Bensenville that Mont-

gomery Ward's prepayments exceeded its tax obligation and that the lessor had an obligation under the lease to refund any overpayments. In a memorandum in opposition to the motion for summary judgment, Wetzel and Pain & Sutherlin maintained that Montgomery Ward was not entitled to summary judgment against them because Montgomery Ward, by entering into a written contract with Bensenville concerning the overpayments, had elected to look to Bensenville for repayment.

Meanwhile, Wetzel and Pain & Sutherlin filed their counterclaim against Bensenville seeking indemnification in accordance with their contract. In a verified answer, Bensenville admitted that it owed a duty of indemnification but denied that any demand for defense or indemnification had been made. On November 28, 1979, Wetzel and Pain & Sutherlin sought summary judgment on their counterclaim, later filing supporting memoranda; Bensenville filed a memorandum in opposition. Correspondence between October and December 1979 reveals that Wetzel and Pain & Sutherlin declined Bensenville's offer of defense in the Montgomery Ward litigation. On February 6, 1980, the trial court denied Bensenville's motion for leave to file an amended answer to the counterclaim. The proposed answer sought to deny that Bensenville owed a duty of indemnification, and to add, as an affirmative defense, that Wetzel and Pain & Sutherlin's refusal to permit Bensenville to assume their defense constituted a breach of the real estate sales contract rendering the indemnification provision void.

On April 10, 1980, the trial court entered summary judgment on count I of the complaint in favor of Montgomery Ward and against Wetzel and Pain & Sutherlin, P.E.F. and Cibula, jointly and severally, in the sum of $117,360; entered summary judgment on the counterclaim in favor of Wetzel and Pain & Sutherlin against Bensenville and its individual partners, jointly and severally, in the amount of $117,360 plus $2882.95 in attorney's fees; found no just reason to delay enforcement or appeal of these judgments; gave Wetzel and Pain & Sutherlin leave to seek additional attorney's fees; and continued the matter for a hearing on the issue of prejudgment interest. On April 22, 1980, a notice of appeal was filed.

On June 2, 1980, the trial court allowed prejudgment interest on count I of the complaint in favor of Montgomery Ward in the amount of $10,432, finding that the lease was an "instrument of writing" within the meaning of the Interest Act. (Ill. Rev. Stat. 1979, ch. 74, par. 2.) The court awarded Wetzel and Pain & Sutherlin $3,120 as additional attorney's fees, and subsequently awarded them prejudgment interest on their counterclaim in the sum of $10,432.

We initially consider the contention of Wetzel and Pain & Sutherlin that the trial court improperly granted summary judgment on count I of

the complaint because a genuine issue of material fact existed. A motion for summary judgment is properly granted if the pleadings, depositions, and admissions on file, together with any affidavits or exhibits, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ill. Rev. Stat. 1979, ch. 110, par. 57; *Hernandez v. Trimarc Corp.* (1976), 38 Ill. App. 3d 1004, 350 N.E.2d 202.

Wetzel and Pain & Sutherlin urge that there is a genuine issue of material fact as to whether Montgomery Ward waived its right to recover the alleged tax overpayments from them. They acknowledge that in September 1978, Montgomery Ward could have sought to recover the accrued tax overpayments from them pursuant to the terms of the lease. They suggest, however, that Montgomery Ward's conduct manifests an intention to release them from this tax overpayment obligation. Wetzel and Pain & Sutherlin maintain that, by contracting with Bensenville for repayment without requesting Wetzel and Pain & Sutherlin to participate in the negotiations and settlement, Montgomery Ward elected to look exclusively to Bensenville and intended to relinquish its rights against Wetzel and Pain & Sutherlin.

■■ We believe the facts set forth in the pleadings and accompanying exhibits are insufficient to raise a genuine issue of fact as to waiver. The record reveals that Bensenville contacted Montgomery Ward and proposed to repay the tax overpayments on an installment basis. Montgomery Ward simply agreed to accept payment on those proposed terms. No payment was ever received from Bensenville. We do not view Montgomery Ward's course of conduct as a clear or unequivocal act evincing an intention to look exclusively to Bensenville for payment or to release Wetzel and Pain & Sutherlin from compliance with their obligation. See *Kane v. American National Bank & Trust Co.* (1974), 21 Ill. App. 3d 1046, 316 N.E.2d 177.

We recognize that summary judgment is particularly inappropriate where the inferences sought to be drawn by the parties concern questions of motive, intent or subjective feelings. (*Schuster v. East St. Louis Jockey Club, Inc.* (1976), 37 Ill. App. 3d 483, 345 N.E.2d 168.) Yet the record is devoid of facts which would warrant an inference that Montgomery Ward intended to relinquish its rights to enforce the lease against Wetzel and Pain & Sutherlin. Accordingly, no genuine issue of fact concerning waiver was presented. (See *Pantle v. Industrial Com.* (1975), 61 Ill. 2d 365, 335 N.E.2d 491.) Consequently, the trial court properly entered summary judgment against Wetzel and Pain & Sutherlin.

■■ We next address P.E.F. and Cibula's contentions that the trial court erred in holding them jointly and severally liable for tax overpayments which accrued, in part, prior to their association with the property. The

subject lease was executed in 1973 by Pain & Sutherlin as agent for undisclosed beneficiaries of a land trust. Pursuant to the lease, the beneficial owners had an obligation to refund tax overpayments made by Montgomery Ward. By assignment, P.E.F. and Cibula later obtained their beneficial interests. P.E.F. and Cibula did not contractually assume the lease when they acquired their rights.

■■ P.E.F. and Cibula initially assert that since an agent's authority comes only from his principal, and they were not principals when Pain & Sutherlin executed the lease, they cannot be deemed parties to the lease. They further submit that the mere assignment of a portion of the beneficial interest in the land trust is insufficient to prove that they assumed the obligations of the lease. From these propositions, P.E.F. and Cibula characterize their relationship with Montgomery Ward as that of privity of estate rather than privity of contract, and thus urge that they are not liable for obligations accruing during the period prior to the acquisition of their interest in the land trust. We find this argument unpersuasive.

First, the decisions cited by P.E.F. and Cibula in support of their argument are not controlling inasmuch as they discuss the obligations of an assignee or a lessee rather than a lessor. These cases hold that where the assignee of a lease does not assume the obligations therein, there is privity of estate but not privity of contract between the original lessor and assignee; the assignee is thus liable for rent only while such privity of estate continues and may terminate his liability by assigning the lease and surrendering possession. (See, *e.g.*, *Leitch v. New York Central R.R. Co.* (1944), 388 Ill. 236, 58 N.E.2d 16; *Consolidated Coal Co. v. Peers* (1896), 166 Ill. 361, 46 N.E. 1105; *Waxenberg v. J. J. Newberry Co.* (1939), 302 Ill. App. 128, 23 N.E.2d 574.) Other authority suggests that the obligations of a successor lessor differ from those of a successor lessee. In *Charles Mulvey Manufacturing Co. v. McKinney* (1914), 184 Ill. App. 476, the court found that the successor lessor took a lease subject to payments previously made by the lessee. The court commented that the right of the lessee is unaffected by the lessor's assignment of the lease and alienation of the premises; and the alienee is subject to all the rights and equities of the lessee against the lessor. Furthermore, in *Stavros v. Karkomi* (1976), 39 Ill. App. 3d 113, 349 N.E.2d 599, this court reasoned that an assignee of a beneficial interest in a land trust acquires all of the interest of its assignor in the property that is transferred and stands in the shoes of the assignor; the assignee thus takes the assignor's interest subject to all legal and equitable defenses existing at the time of assignment. See H. Kenoe, Kenoe on Land Trusts §5.7, at 49-50 (Ill. Inst. Cont'g Legal Educ. 1976); *Piff v. Berresheim* (1950), 405 Ill. 617, 92 N.E.2d 113; *Allis-Chalmers Credit Corp. v. McCormick* (1975), 30 Ill. App. 3d 423, 331 N.E.2d 832.

When the beneficial interests were assigned to P.E.F. and Cibula,

Montgomery Ward had already made monthly payments in excess of its tax obligation and thus was entitled to a refund from the lessor, the beneficiaries of the land trust. As assignees, P.E.F. and Cibula stood in the shoes of their assignors and became subject to Montgomery Ward's claim for reimbursement of such overpayments.

Although P.E.F. and Cibula were vulnerable to such claims assertable against the beneficial interest, they had a means available to protect themselves from the lessor's outstanding obligations. Upon assignment, they could have sought to identify and extinguish preexisting obligations of the lessor by requiring predecessor beneficiaries to request Montgomery Ward to execute an estoppel certificate as provided in the lease. Montgomery Ward had no similar opportunity to protect its rights. The lease did not identify the beneficiaries, and Montgomery Ward was never advised of any transfer or change in ownership. Rent continued to be paid by Montgomery Ward and received by unknown beneficiaries, including P.E.F. and Cibula. Beneficiaries of a land trust cannot be permitted to adopt a legal entity and be blessed with both a sword and a shield depending upon the facts and circumstances. (*In re Application of County Treasurer* (1969), 113 Ill. App. 2d 50, 251 N.E.2d 757.) While P.E.F. and Cibula could properly shield their identity from Montgomery Ward, they should not be allowed to rely upon this shield to avoid the obligations arising from their beneficial interests. Accordingly, the trial court properly entered summary judgment in favor of Montgomery Ward against P.E.F. and Cibula, jointly and severally, as beneficiaries of the land trust.

■■ P.E.F. and Cibula also contest the allowance of prejudgment interest in favor of Montgomery Ward. They first urge that the filing of their notice of appeal on April 22, 1980, from the entry of summary judgment divested the trial court of jurisdiction to award prejudgment interest on June 2, 1980.

The proper filing of a notice of appeal causes the jurisdiction of the appellate court to attach and deprives the trial court of jurisdiction to modify its judgment or to rule on matters of substance which are the subject of the appeal. (See *County of Cook v. Priester* (1974), 22 Ill. App. 3d 964, 318 N.E.2d 327, *aff'd* (1976), 62 Ill. 2d 357, 342 N.E.2d 41.) Yet in *Chicago Title & Trust Co. v. Czubak* (1978), 67 Ill. App. 3d 184, 384 N.E.2d 765, this court held that even after the filing of the notice of appeal, the trial court retained jurisdiction to order the payment of attorney's fees and costs pursuant to section 41 of the Civil Practice Act. The court reasoned that such order related to a matter not affected by the appeal or dependent upon the outcome of the suit. Additionally, contrary to P.E.F. and Cibula's suggestion, the court's award of prejudgment interest was a ruling on a separate matter rather than a modification of its

earlier judgment. P.E.F. and Cibula filed their notice of appeal pursuant to Supreme Court Rule 304, which allows an appeal from a final judgment as to one or more but fewer than all of the claims if the court makes the express finding that there is no just reason for delaying the appeal. (Ill. Rev. Stat. 1979, ch. 110A, par. 304; see *In re Annexation to City of Darien* (1973), 16 Ill. App. 3d 140, 304 N.E.2d 769.) In its order of April 10, 1980, the court entered summary judgment on count I of the complaint and found no just reason for delaying enforcement of that final order. It rendered no ruling disposing of the merits of the claim for prejudgment interest. The trial court properly retained jurisdiction after the filing of the notice of appeal to dispose of the pending issue of prejudgment interest.

P.E.F. and Cibula further assert that the award of prejudgment interest was inappropriate because of the existence of a good faith dispute between the parties. That argument has been rejected by this court.

In awarding prejudgment interest, the trial court ruled that a lease was an "instrument of writing" within contemplation of the Interest Act and that the fact that P.E.F. and Cibula may have contested the obligation in good faith was not relevant. (Ill. Rev. Stat. 1979, ch. 74, par. 2.) A good-faith defense des not preclude the recovery of prejudgment interest on money due under an instrument of writing. (See, *e.g.*, *Servbest Foods, Inc. v. Emessee Industries, Inc.* (1980), 82 Ill. App. 3d 662, 403 N.E.2d 1; *Madison Park Bank v. Field* (1978), 64 Ill. App. 3d 838, 381 N.E.2d 1030; *Central National Chicago Corp. v. Lumbermens Mutual Casualty Co.* (1977), 45 Ill. App. 3d 401, 359 N.E.2d 797; *Martin v. Orvis Brothers & Co.* (1974), 25 Ill. App. 3d 238, 323 N.E.2d 73.) The trial court properly ruled that Montgomery Ward was entitled to prejudgment interest on the overpayments due and owing under the lease.

Remaining for our consideration are the various errors advanced by Bensenville in its appeal from the entry of summary judgment on the counterclaim and the award of attorney's fees and prejudgment interest in favor of Wetzel and Pain & Sutherlin.

■■ Bensenville initially urges that the trial court erred in denying its motion to file an amended answer. Section 46(1) of the Civil Practice Act provides that amendments may be allowed on just and reasonable terms at any time prior to final judgment. (Ill. Rev. Stat. 1979, ch. 110, par. 46(1).) Although the policy adopted by Illinois courts is one of liberality in allowing amendments, the parties do not have an absolute or unlimited right to amend. (*Hastings v. Abernathy Taxi Association, Inc.* (1973), 16 Ill. App. 3d 671, 306 N.E.2d 498.) Permission to file an amendment rests within the sound discretion of the trial court and its decision will not be disturbed on review absent an abuse of that discretion. *United Air Lines, Inc. v. Conductron Corp.* (1979), 69 Ill. App. 3d 847, 387 N.E.2d 1272.

■■ Bensenville was not prejudiced by the court's refusal to allow the amendment. In the proposed answer, Bensenville sought to deny its duty to indemnify. Such denial would have been unavailing in view of Bensenville's verified answer admitting the duty to indemnify. Once an admission is made in a verified pleading, it remains binding upon the pleader even after a superseding amendment unless the amendment discloses that the earlier admissions were made through mistake or inadvertence. (*Yarc v. American Hospital Supply Corp.* (1974), 17 Ill. App. 3d 667, 307 N.E.2d 749.) The amended answer also sought to add, as an affirmative defense, that Bensenville had a right to control Wetzel and Pain & Sutherlin's defense of the Montgomery Ward litigation and that they breached the indemnity agreement by conducting their own defense. Although the affirmative matter technically was not before the trial court, the issue was, in fact, presented and argued before the trial court in opposition to the motion for summary judgment. The court did not abuse its discretion in refusing to allow Bensenville's motion to file an amended answer.

Bensenville also argues that the entry of summary judgment on the counterclaim was erroneous because genuine issues of material fact existed concerning the scope and performance of the indemnity agreement. These purported disputed issues include whether the parties, in executing the contract, intended Bensenville's duty to indemnify to carry with it the right to control the defense of the Montgomery Ward litigation, and whether Wetzel and Pain & Sutherlin tendered such defense. In support, Bensenville points out that in the counterclaim, Wetzel and Pain & Sutherlin alleged that their demand upon Bensenville to indemnify and defend was ignored. Bensenville denied this allegation by verified answer and affidavit.

■■ An indemnity contract is to be construed like any other contract, and the primary rule of construction is to ascertain the intention of the parties. (*National Bank v. West Construction Co.* (1976), 41 Ill. App. 3d 686, 355 N.E.2d 43; *De Tienne v. S. N. Nielsen Co.* (1963), 45 Ill. App. 2d 231, 195 N.E.2d 240.) Unless the contract is ambiguous, its meaning will be determined from the words used.

The indemnity provision before us is clear and unambiguous. It provides that Bensenville "assumes all obligations of Seller [Wetzel and Pain & Sutherlin] to [Montgomery Ward] and as a result of such overpayment of taxes as aforesaid and indemnifies Seller from and against all costs and expenses Seller may incur, including reasonable attorneys fees, arising out of such overpayment." The concepts of "tender and defense" or "right to control" are never mentioned, explicitly or implicitly, in the clause. From an examination of the clear and uncon-

troverted language of the agreement, the court properly concluded that no genuine issue of material fact existed as to whether the parties intended to impose a duty to tender the defense upon Wetzel and Pain & Sutherlin or to afford Bensenville the right to control the defense. Absent such duty to tender the defense, the question whether Wetzel and Pain & Sutherlin actually tendered the defense would not constitute a material issue of fact.

We also must reject Bensenville's contention that summary judgment was improper because Wetzel and Pain & Sutherlin, the indemnitees, failed to establish that their refusal to permit Bensenville to assume their defense did not prejudice Bensenville, the indemnitor.

The cases cited by Bensenville as authority for its position are inapposite. The decisions of *Parfait v. Jahncke Service, Inc.* (5th Cir. 1973), 484 F.2d 296, *cert. denied* (1974), 415 U.S. 957, 39 L. Ed. 2d 572, 94 S. Ct. 1485; *Whisenant v. Brewster-Bartle Offshore Co.* (5th Cir. 1971), 446 F.2d 394; and *Maritime Overseas Corp. v. United States* (N.D. Cal. 1977), 433 F. Supp. 419, establish that where an indemnitee settles his claim without affording his indemnitor an opportunity to approve the settlement or conduct the defense, the indemnitee is required to show that the settlement does not contravene equitable indemnity principles. Wetzel and Pain & Sutherlin did not negotiate or enter into a settlement with Montgomery Ward. Instead, they vigorously defended against Montgomery Ward's claim.

Analogizing the present situation to the context of an insured-insurer relationship, Bensenville suggests that its obligation to indemnify carries with it a right to expect cooperation from Wetzel and Pain & Sutherlin as well as to control the defense, and that absent such cooperation, it can be released from its duty to indemnify. Bensenville's reliance upon *Sargent v. Johnson* (8th Cir. 1977), 551 F.2d 221, is misplaced. Unlike the circumstances presented in *Sargent*, Wetzel and Pain & Sutherlin did not discharge counsel provided by its "insurer" and enter into a settlement nor did the contract contain an assistance and cooperation provision. Moreover, it would be anomalous to require counterclaimants to permit Bensenville to control the Montgomery Ward litigation in view of the counterclaim and the fact that it was Bensenville's alleged breach of contract which exposed them to potential liability. The trial court properly entered summary judgment on the counterclaim in favor of Wetzel and Pain & Sutherlin.

Bensenville next challenges the award of attorney's fees to Wetzel and Pain & Sutherlin. They sought to recover such fees incurred in defending the underlying Montgomery Ward litigation and in prosecuting the counterclaim for indemnification.

We reject Bensenville's argument that the attorney's fees were not

"reasonable" because they could have been avoided completely had Wetzel and Pain & Sutherlin accepted Bensenville's offer of defense. Aside from the fact that the contract did not require Wetzel and Pain & Sutherlin to accept Bensenville's offer to defend, specific inclusion of attorney's fees in the indemnity provision suggests that fees for services rendered by counsel other than those retained by Bensenville was contemplated by the parties' agreement and thus not "unreasonable." Bensenville also argues that the allowance of attorney's fees should be limited to those incurred in defending against the underlying claim and should not be extended to include fees for services rendered in establishing the right to indemnity. The cases of *Bagby v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (8th Cir. 1974), 491 F.2d 192, and *General Electric Co. v. Mason & Dixon Lines, Inc.* (W.D. Va. 1960), 186 F. Supp. 761, upon which Bensenville relies for this proposition, are distinguishable. There, a contract of indemnity specifically allowing attorney's fees was absent.

Absent a statute or contractual agreement, attorney's fees and the ordinary expenses and burdens of litigation are not allowable to the successful party. (*Kerns v. Engelke* (1979), 76 Ill. 2d 154, 390 N.E.2d 859.) Where, however, required by the specific terms of a written contract of indemnity, expenses and attorney's fees are recoverable. *Reese v. Chicago, Burlington & Quincy R.R. Co.* (1972), 5 Ill. App. 3d 450, 283 N.E.2d 517, *aff'd* (1973), 55 Ill. 2d 356, 303 N.E.2d 382.

■■ The subject indemnity agreement expressly provided for the indemnification of attorney's fees Wetzel and Pain & Sutherlin may incur arising out of the tax overpayments. As the complaint and counterclaim arose out of the overpayments, the attorney's fees incurred in the actions were recoverable items.

Bensenville's final contention is that the court erred in awarding additional attorney's fees and prejudgment interest in favor of Wetzel and Pain & Sutherlin. As P.E.F. and Cibula urged earlier, Bensenville submits that its filing of a notice of appeal on April 22, 1980, deprived the trial court of jurisdiction to grant these additional awards on June 2 and 6, 1980. For the reasons we expressed earlier in addressing P.E.F. and Cibula's similar argument, we find that the filing of the notice of appeal did not divest the trial court of jurisdiction to consider the pending and separate issues of additional attorney's fees and prejudgment interest. *Chicago Title & Trust Co. v. Czubak* (1978), 67 Ill. App. 3d 184, 384 N.E.2d 765.

For the foregoing reasons, the orders of the circuit court of Cook County granting summary judgment on count I of the complaint in favor of Montgomery Ward and against Wetzel, Pain & Sutherlin, P.E.F. and Cibula, jointly and severally, for the principal amount and prejudgment

interest are affirmed. The orders granting summary judgment on the counterclaim in favor of Wetzel and Pain & Sutherlin and against Bensenville for the principal amount, prejudgment interest and attorney's fees are also affirmed.

Affirmed.

RIZZI, P. J., and WHITE, J., concur.